IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY HEREDIA, : | |
| Petitioner : | |
| : | |
| vs. : | CIVIL NO. 1:CV-14-0214 |
| : | |
| TREVOR WINGARD, et al. : | (Judge Caldwell) |
| Respondents : | |
| : | |
| : | |

*M E M O R A N D U M*

I. *Introduction*

Henry Heredia, an inmate at the state correctional institution in Laurel Highlands, Somerset, Pennsylvania, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges his convictions in the Court of Common Pleas of the Seventeenth Judicial District of Pennsylvania, Union County Branch, for among other offenses, aggravated assault, fleeing or attempting to elude police, and driving under the influence. After a jury trial, Petitioner was sentenced in May 2008 to fifty-eight to 126 months' imprisonment, later amended to 57 to 126 months.

The petition presents the following three claims. First, trial counsel was ineffective in failing to properly advise Petitioner on a plea offer Petitioner rejected, with Petitioner going to trial instead. Second, trial counsel was ineffective in failing to use police reports and video evidence of the police chase to cross-examine Pennsylvania state troopers who testified at trial. Third, trial counsel was ineffective in failing to object to the erroneous description in the verdict slip of the charge of aggravated assault in

Count 2. Petitioner asserts the description was part of the jury instructions and that the description made the instructions on this offense erroneous.

II. *Standard of Review*

When a petitioner seeks relief on federal claims adjudicated against him by the state courts, habeas review of the state courts' resolution of the claims is governed by 28 U.S.C. § 2254(d)(1) and (d)(2). Under subsection (d)(1), we may grant the writ if the state courts' adjudication of the claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent. "[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis,* 562 F.3d 231, 236 (3d Cir. 2009)(cited cases omitted). "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs v. Horn,* 395 F.3d 92, 100 (3d Cir. 2005)(cited cases omitted). If "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief cannot be granted. *Harrington v. Richter,* 562 U.S. 86, ___, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoted case omitted).

Under subsection (d)(2), we may grant the writ if the state courts' adjudication of the claims "resulted in a decision that was based on a unreasonable

-2-

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "A state court decision is based on 'an unreasonable determination of the facts' only if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013)(quoted case omitted). State-court fact finding "is presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

III.  *Discussion*

> A.  *The Claim that Trial Counsel Was Ineffective in Failing to Properly Advise Petitioner on a Plea Offer*

Defendants have a Sixth Amendment right to counsel during the plea-bargaining process, *Lafler v. Cooper*, ___ U.S. ___, ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012), and thus they have the right to effective assistance of counsel during plea negotiations. *Id.*, 132 S.Ct. at 1384. To establish ineffective assistance of counsel when a defendant rejects a plea offer and is found guilty after a trial, the defendant must show two things. First, counsel's performance was deficient. *Id.* at ___, 132 S.Ct. at 1384. Second, the defendant was prejudiced by counsel's performance; specifically, the defendant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it

in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at ___, 132 S.Ct. at 1385. "[T]he defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id.* at ___, 132 S.Ct. at 1386.

In the instant case, Petitioner was charged in an "amended/modified information" with thirteen offenses occurring on August 15, 2007. The first nine offenses are: (1) in Count 1 aggravated assault under 18 Pa. Con. Stat. Ann. § 2702(a)(3), a felony of the second degree, for attempting to cause bodily injury to a police officer by striking the officer's car during a pursuit; (2) in Count 2 aggravated assault under 18 Pa. Con. Stat. Ann. § 2702(a)(6), a felony of the second degree, for attempting by physical menace to put a police officer in fear of imminent bodily injury by striking the officer's car during a pursuit; (3) in Count 3 recklessly endangering another person under 18 Pa. Con. Stat. Ann. § 2705, a misdemeanor of the second degree, by striking a police officer's car while he was operating it; (4) in Count 4 recklessly endangering another person under 18 Pa. Con. Stat. Ann. § 2705, a misdemeanor of the second degree, by striking a police officer's car while he was operating it; (5) in Count 5 fleeing or attempting to elude police under 75 Pa. Con. Stat. Ann. § 3733(a), a felony of the third degree; (6) in Count 6 (a DUI offense) driving after imbibing a sufficient amount of alcohol that he was rendered incapable of driving safely under 75 Pa. Con. Stat. Ann. § 3802(a)(1), a misdemeanor; (7)

in Count 7 (a DUI offense) driving after imbibing a sufficient amount of alcohol that his blood alcohol content (BAC) was at least .16% or higher within two hours after operating the vehicle under 75 Pa. Con. Stat. Ann. § 3802(c), a misdemeanor; (8) in Count 8 disorderly conduct by using obscene language or a gesture under 18 Pa. Con. Stat. Ann. § 5503(a)(3) while at the hospital, a misdemeanor of the third degree; and (9) in Count 9 disorderly conduct by using obscene language or a gesture under 18 Pa. Con. Stat. Ann. § 5503(a)(3) while at the hospital, a misdemeanor of the third degree.  Petitioner was also charged with the following four summary offenses: (1) in Count 10 disregarding traffic lanes; in Count 11 failing to signal a lane change; in Count 12 reckless driving; and in Count 13 driving without a license.

The jury acquitted Petitioner of Count 1 and found him guilty of Counts 2 through 5, 8, and 9.  The court found Petitioner guilty of Counts 6 and 7 and of the summary offenses in Counts 10 through 13.

Petitioner's claim that his trial counsel failed to properly advise him about the plea offer from the prosecutor was litigated in postconviction proceedings under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Con. Stat. Ann. §§ 9541-9546. Petitioner and his trial counsel testified about the proposed plea bargain at the PCRA hearing.

The proposed plea bargain was discussed immediately before the start of the trial. (Doc. 15-1, ECF p. 124, PCRA hearing transcript).  Petitioner testified that he and the prosecutor discussed a plea bargain back and forth; trial counsel was present but

did not say anything. (*Id.*). Petitioner recalled that the prosecutor had offered him a deal to plead guilty to the charge of fleeing and eluding and a "couple of lesser charges." Petitioner was not sure which of the lesser charges were included in the deal. (*Id.*, ECF p. 125). Petitioner told the prosecutor that he did not see any point in accepting the deal that had been offered because if trial counsel did his job at trial, that would be the worst he would be convicted of anyway. (*Id.*). "At that point, [trial counsel] interrupted," stating that he did not believe they could reach agreement. The prosecutor then left the room. (*Id.*).

Petitioner asked trial counsel why he had interrupted because Petitioner "was interested in negotiating or at least attempting to negotiate some kind of plea agreement . . . ." (*Id.*). Counsel responded that he did not want to give away any trial strategy. (*Id.*). Trial counsel did not offer any advice on the plea deal. (*Id.*). Petitioner admitted on cross-examination that the offer the prosecutor had made was the prosecutor's "bottom line plea agreement," that the prosecutor would not agree to anything less than the offer that had been made. (*Id.*, ECF pp. 141, 143). Petitioner acknowledged that the prosecutor told him that the jury could convict him of aggravated assault and that his sentence would therefore be worse, but Petitioner received no advice from his counsel about the plea. If counsel had advised him to take the offer, he would have accepted it. (*Id.*, ECF pp. 142-44).

Trial counsel testified that the plea agreement would have required Petitioner to plead guilty to five offenses, the offense of fleeing and eluding, the two

offenses of recklessly endangering, one DUI offense, and one disorderly conduct charge. Petitioner had the option of not taking a DUI offense and taking a second disorderly conduct charge instead. (*Id.*, ECF p. 172). Trial counsel confirmed that he did terminate the discussion because Petitioner was arguing with the prosecutor why the offer should be better and was revealing trial strategy. The prosecutor could have figured the strategy out for himself, but counsel thought there was no reason to give him an advantage "and the offer was what it was." (*Id.*, ECF p. 173).

Trial counsel testified to a conversation he had with Petitioner after the plea discussion ended and after they had entered the courtroom. Counsel could not remember the extent of the conversation but expressed his "sentiments" that he "did not think it was a bad offer." (*Id.*, ECF p. 174). Counsel did not tell him he had "to take the offer." He would never do that. Just as with the decision to take the stand, it was Petitioner's decision to accept the plea offer. "But I did tell him that I thought it was a reasonable offer, and I wouldn't have blamed him for taking it." (*Id.*, ECF pp. 174-75). Counsel testified that Petitioner would be lying if he said otherwise now. (*Id.*, ECF p. 175).

The trial court rejected this claim at the conclusion of the hearing for the following reasons. First, Petitioner's own testimony showed that counsel had been excluded from the plea negotiations, which were conducted between Petitioner and the prosecutor. (Doc. 15-1, ECF p. 94). Second, since the prosecutor was not going to move off of his bottom-line offer and Petitioner was not going to accept that offer,

counsel's termination of the negotiations "saved [Petitioner] from his own attitude and arrogance by revealing defense information to the Commonwealth before trial." (*Id.*, ECF p. 95).[1]  Third, trial counsel's "testimony [was] credible [when] he recommended that the plea agreement be accepted under the circumstances, which [Petitioner] rejected." (*Id.*, ECF p. 95).

> On appeal, the Pennsylvania Superior Court affirmed, stating as follows:
>
> Appellant's testimony was contradicted by that of [trial counsel], who testified that he did, in fact, discuss the offer with appellant: "But I did tell him that I thought it was a reasonable offer, and I wouldn't have blamed him for taking it. If he wants to say otherwise now, again, he is lying." (*Id.* at 64).  The PCRA court specifically found [trial counsel's] testimony credible that he recommended that the plea agreement be accepted under the circumstances, which [appellant] rejected." (*Id.* at 105).  We are bound by the PCRA court's credibility determinations.

(Doc. 15-1, ECF p. 109, *Commonwealth v. Heredia*, No. 220 MDA 2012 (Pa. Super. Ct. Mar. 13, 2013)).  The superior court also noted that the prosecutor's offer was a bottom-line offer and that Petitioner was not going to accept that offer. (*Id.*, ECF p. 110).[2]

---

[1] Based on his observations at the PCRA hearing, the presiding judge observed that Petitioner "would present as an arrogant individual with a defiant attitude." (*Id.*, ECF p. 93).

[2] Parenthetically, we note that the superior court did grant relief on the two DUI offenses, vacating those convictions on the basis of Petitioner's confrontation-clause claim. (Id. ECF p. 108).  Those charges were later nol prosed. (Doc. 15-1, ECF p. 116).

In the instant proceedings, Petitioner argues against the superior court's ruling, in relevant part, as follows.[3] First, under 28 U.S.C. § 2254(d)(2), the decision is based upon an unreasonable determination of the facts based on the evidence presented at the PCRA hearing. Specifically, Petitioner contends that the finding of fact that trial counsel recommended that the plea agreement be accepted but that Petitioner rejected that advice is not supported by the record. (Doc. 1-2, ECF pp. 13-14).

In support, Petitioner alleges that trial counsel gave conflicting testimony, first admitting that he terminated the plea-bargain discussion and then asserting that he later told Petitioner in the courtroom that it was not a bad offer. There is no contradiction in this evidence that would cause us to reject the superior court's fact finding.

Petitioner next argues that even if the advice had been given, it would have occurred after the plea negotiations had ended and the offer was no longer available. We disagree. There is nothing in the record to indicate that the plea offer was not still open after trial counsel ended the discussion with the prosecutor.

Petitioner also argues the record does not support the superior court's finding that Petitioner was not going to accept the prosecutor's offer. We reject this argument. Petitioner admitted that the offer was a bottom-line one and that it was not going to change. He also said that he was trying to negotiate a better deal. The fact

---

[3] Petitioner also argues against the trial court's analysis, but we look only to the last reasoned opinion of the state courts. *See Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (quoting *Bond v. Beard,* 539 F.3d 256, 289–90 (3d Cir. 2008)).

finding was thus not unreasonable.  In any event, the real issue is whether Petitioner would have accepted the offer if trial counsel had discussed the offer with him properly.

The superior court concluded that trial counsel had properly discussed the offer with him.  Petitioner disputes that determination, arguing essentially that the superior court's conclusion that Petitioner's claim fails because Petitioner had rejected the offer after counsel had recommended acceptance is contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent under 28 U.S.C. § 2254(d)(1).  Petitioner argues that trial counsel's statement that he "did not think it was a bad offer" did not satisfy his obligation to give constitutionally adequate advice on whether to accept the plea offer.  We disagree.  This position ignores trial counsel's other testimony that he told Petitioner "it was a reasonable offer," and that he would not blame him for taking it.  We cannot say that section 2254(d)(1) requires us to disturb the superior court's ruling based on this testimony.

> B. *The Claim that Trial Counsel Was Ineffective in Not Using Police Reports and Dashboard Videos to Cross-Examine the State Troopers Who Apprehended Him*

Petitioner was apprehended by two members of the Pennsylvania State Police after a high-speed chase on Interstate 80 in Union County.  The two officers were Corporal Richard Henry and Trooper Matthew J. LaForme.  Another state trooper, Corporal Michael J. Triponey prepared an incident report based in part on interviews of Henry and LaForme.  LaForme prepared two reports, a report as a victim and an intoxication report.  (Doc. 20-2, ECF p. 39).  Henry and LaForme were driving in separate

marked state police vehicles, and dashboard cameras were operating in both vehicles during the pursuit.  The videos were played during the trial.  Henry and LaForme testified at trial that during the chase Petitioner struck both of their vehicles.  (Doc. 20-1, ECF pp. 58-59; Doc. 20-2, ECF p. 26; Doc. 20-2, ECF pp. 81, 100; Doc. 20-3, ECF p. 1).

Petitioner argues that trial counsel was ineffective in not using the police reports and videos to cross-examine police witnesses in the following ways.  First, while trial counsel did cross-examine Cpl. Triponey about a discrepancy between his report and Henry's testimony, counsel did not explore further and instead simply accepted Triponey's testimony that Triponey was mistaken, not Henry.  (Doc. 1-2, Pet'r's Brief, ECF pp. 21-22; Doc. 2-4, ECF pp. 51-52).  Second, trial counsel was ineffective in not using the videos to cross-examine Henry and LaForme as the videos would have contradicted their testimony in two ways.  For one, the videos would have contradicted their testimony that Petitioner drove at their cars.  For another, the videos would have shown that the troopers altered their testimony in the face of the contradictory Triponey report which stated that Henry initiated the "pit maneuver" against Petitioner's vehicle and omitted any statement by Henry to Petitioner's having struck his car before the maneuver.  (Doc. 1-2, Brief, ECF p. 21).  Third, trial counsel was ineffective in not using the police reports on cross-examination as the reports, consistent with the videos, could also have been used to show that Henry and LaForme had altered their version of events for trial.  (Doc. 1-2, ECF p. 23).  Fourth, trial counsel was ineffective in not using a video made while Petitioner was being removed from the back of LaForme's vehicle at the

-11-

hospital to cross-examine Trooper Steven Schmit.  The video could have been used to impeach Schmit's testimony concerning Petitioner's conduct at that time, including a lunge he supposedly made while getting out of the car.

Petitioner raises other failures to cross-examine.  First, trial counsel failed to cross-examine about the abuse Petitioner suffered after being handcuffed and before being taken to the hospital.  Petitioner claims allegations of abuse would have raised issues of credibility and bias on the part of the state police.  It also would have explained Petitioner's hostility toward the officers.  Second, trial counsel failed to cross-examine about the filing of nine false charges of aggravated assault after the prosecutor reduced them to two charges.  Third, trial counsel failed to cross-examine Henry and LaForme about their testimony concerning Henry's accidental discharge of his firearm, which according to Petitioner was an impossibility as described by the troopers.

Petitioner makes the following claim of trial counsel ineffectiveness at closing.  Trial counsel failed to argue the impossibility of Henry's and LaForme's testimony concerning Henry's accidental discharge of his firearm while pulling Petitioner out of his car after the pursuit was over.

At the PCRA hearing, trial counsel testified about his failure to use the videos on cross-examination of the troopers.  Trial counsel stated that he did not confront the officers with the videos because he did not want to give skilled troopers a chance to explain away the inconsistencies.  (Doc. 15-1, ECF pp. 178-79, 180).  Instead, he chose to argue at closing that the videos showed what happened and that the troopers'

testimony was inconsistent with the videos.  (*Id.*, ECF pp. 180-81).  See also Doc. 20-5, ECF pp. 21, 23, 27, trial counsel's closing argument).  In his closing, he also relied on police reports to challenge the troopers' credibility.  (Doc. 20-5, ECF pp. 28, 29-30).

At the close of the PCRA hearing, the trial court rejected the cross-examination claims partially on the basis that counsel's decision not to cross-examine and to wait until closing was a reasonable trial strategy.  (Doc. 15-1, ECF pp. 90-91).  The superior court agreed.  (Doc. 15-1, ECF pp. 110-13, PCRA opinion of the superior court).

We cannot grant relief as the superior court's ruling is not contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent.  *See* 28 U.S.C. § 2254(d)(1).  Petitioner presents a claim of ineffective assistance of counsel.  Such claims are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles v. Mirzayance,* 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009).  The superior court could reasonably conclude that trial counsel's decision not to cross-examine was reasonable trial strategy.  Further, we will not disturb the superior court's judgment on the basis of the other arguments made.

> C. *The Claim that Trial Counsel Was Ineffective in*
> *Failing to Object to the Description in the Verdict*
> *Slip of the Charge of Aggravated Assault in Count 2*

Petitioner claims trial counsel was ineffective in failing to object to the description in the verdict slip of the charge of aggravated assault in Count 2. As noted above, Counts 1 through 5, 8, and 9 were tried to the jury. Count 2 was a charge of aggravated assault under 18 Pa. Con. Stat. Ann. § 2702(a)(6) for attempting by physical menace to put a Henry in fear of imminent bodily injury by striking the officer's car during the pursuit. To assist the jury, the court put a parenthetical description of each offense next to each numbered count. (Doc. 15-1, ECF pp. 7-8). Next to Count 2 the court's description was: "Aggravated Assault (placing Corporal Henry in fear of imminent serious bodily injury)." (*Id.*, ECF p. 7).

Petitioner argues that the description was part of the jury instructions and was erroneous because it left out an element of the offense, that Petitioner attempted to place Henry in fear of imminent serious bodily injury, not that he simply placed Henry in such fear. Petitioner contends that this allowed the jury to find him guilty of the offense without also finding that he had the requisite mens rea. (Doc. 1-2, Pet'r's Brief, ECF p. 33).

In opposition, Respondents argue that Petitioner did not exhaust this claim. We need not address exhaustion as the claim lacks merit. *See* 28 U.S.C. § 2254(b)(2). As Petitioner argues, a defendant has a due process right to jury instructions that inform the jury of every element of the offense the state must prove. *See Boettlin v. Smeals*,

-14-

523 F. App'x 867, 870 (3d Cir. 2013)(nonprecedential). However, Petitioner does not argue that the instructions on Count 2 were incorrect. He concedes that they were correct, both when originally given and when the jury asked for assistance. Both times the court included the element of attempt. (Doc. 20-5, ECF pp. 1-3; ECF pp. 62-64).

It is immaterial that the description of Count 2 did not include the element of attempt. Petitioner characterizes the description as part of the jury instructions and that therefore the description made the instructions on this offense erroneous. Petitioner is mistaken. The court informed the jury that the description, like the other descriptions of the offenses listed on the verdict slip, was a "shorthand reference" to the offense in the Count. (Doc. 20-4, ECF p. 99, referring to the descriptions of Counts 1 and 2 as a "shorthand reference;" *id.*, ECF p. 100; Doc. 20-5, ECF p. 13, referring to Count 8 in a "shorthand way" as "obscene language outside the hospital"). Since the descriptions on the verdict slip were not part of the instructions, this claim lacks merit.

IV. *Conclusion*

We will issue an order denying the section 2254 petition. The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as

-15-

long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

                                                <u>/s/William W. Caldwell</u>  
                                                William W. Caldwell  
                                                United States District Judge

Date: January 22, 2015